O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

CRUZ LOBATO,                                      )   NO. SACV 09-00027-MAN
                                                  )
              Plaintiff,                          )
                                                  )   MEMORANDUM OPINION
        v.                                        )
                                                  )   AND ORDER
MICHAEL J. ASTRUE,                                )
Commissioner of Social Security,                  )
                                                  )
              Defendant.                           )
_____ )

        Plaintiff filed a Complaint on January 7, 2009, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of her
application for a period of disability ("POD") and disability insurance
benefits ("DIB").    The parties consented to proceed before the
undersigned United States Magistrate Judge pursuant to 28 U.S.C. §
636(c) on March 11, 2009.    The parties filed a Joint Stipulation on
September 9, 2009 ("Joint Stip."), in which:  plaintiff seeks an order
reversing the Commissioner's decision and finding that plaintiff is
disabled and entitled to benefits, or in the alternative, remanding the
case for a new administrative hearing; and defendant requests that the
Commissioner's decision be affirmed.    The Court has taken the parties'

Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On October 31, 2006, plaintiff filed an application for POD and DIB, alleging disability beginning October 30, 2000.  (Administrative Record ("A.R.") 81-85.)   In the disability report accompanying her application, plaintiff alleged shoulder injury, learning disorder, stress, and dyslexia as impairments and asserted that she cannot work due to these impairments, because she cannot perform assigned tasks and cannot read and write.  (A.R. 94.)   At the reconsideration level, plaintiff additionally alleged that she suffers from depression, which commenced in April 2006.  (A.R. 94, 135.)

The Commissioner denied plaintiff's claim for benefits initially and upon reconsideration.  (A.R. 33-36, 42-45.)  On July 3, 2008, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Barry S. Brown ("ALJ").  (A.R. 15-30.)   On October 8, 2008, the ALJ denied plaintiff's claim.  (A.R. 4-13.) Subsequently, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  (A.R. 1-3.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his October 8, 2008 decision, the ALJ found that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2005, and that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of

October 30, 2000, through December 31, 2005, her date last insured
("DLI"). (A.R. 9.)  The ALJ also found that, through her last insured
date, plaintiff had the medically determinable impairments of "status
post cervical sprain and status post left shoulder sprain (20 C.F.R. §
404.1520(c))." (*Id.*)  The ALJ further found that, through her last
insured date, plaintiff did not have an impairment or combination of
impairments that significantly limited her ability to perform basic work
related activities for 12 consecutive months, and therefore, she did not
have a severe impairment or combination of impairments. (*Id.*)  The ALJ
found that plaintiff's statements concerning the intensity, persistence,
and limiting effects of her symptoms were "not entirely credible prior
to the date last insured." (A.R. 11.)

   In assessing whether plaintiff's impairments were severe, the ALJ
based his decision on a report by an orthopedic surgeon who performed a
consultative examination, which indicated that plaintiff's "subjective
complaints were not matched by any objective finding" and that "her MRI
demonstrated normal findings with no significant pathology." (A.R. 11.)
The ALJ also noted that plaintiff's treating physician classified her as
disabled only until July 31, 2000. (*Id.*)  The ALJ dismissed plaintiff's
claim that she had functional limitations arising from mental health
issues, because her treatment related to her alleged depression began
after her last insured date. (A.R. 12.)  Therefore, the ALJ concluded
that plaintiff was not disabled, as defined by the Social Security Act,
at any time from October 30, 2000, through December 31, 2005. (A.R.
13.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the record can constitute substantial evidence, only those "reasonably drawn from the record" will suffice.  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not

4

affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v.</u> Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff frames her issues as follows:  (1) whether the ALJ properly considered the treating physician's opinion regarding plaintiff's inability to read; (2) whether the ALJ properly considered plaintiff's testimony regarding her inability to read and made proper credibility findings; (3) whether the ALJ properly developed the record regarding plaintiff's inability to read and her special education; (4) whether the ALJ properly considered the type, dosage, and side effects of plaintiff's prescribed medications; and (5) whether the ALJ properly considered the severity of plaintiff's alleged mental impairments. (Joint Stip. at 2-3.)  These issues are addressed below, although not in the precise manner presented.

**I.   <u>The Five-Step Evaluation</u>**

To be eligible for disability benefits, a claimant must demonstrate a medically determinable impairment that prevents the claimant from engaging in substantial gainful activity and is expected to result in

death or to last for a continuous period of at least 12 months.   <u>Tacket</u> <u>v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999); <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998); 42 U.S.C. § 423(d)(1)(A).

In assessing whether a claimant is disabled, the ALJ follows a five-step, sequential evaluation process, as set forth in 20 C.F.R. § 404.1520.   At step one, the ALJ determines if the claimant is engaging in substantial gainful activity.   If so, the claimant is found not disabled; if not, the ALJ proceeds to step two.   At step two, the ALJ determines if the claimant has a "severe" impairment.   If so, the ALJ proceeds to step three; if not, then a finding of not disabled is appropriate.   At step three, the ALJ determines if the claimant's impairment or combination of impairments meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.   If so, the claimant is automatically determined disabled; if not, the ALJ proceeds to step four.   At step four, the ALJ determines if the claimant is capable of performing his or her past work.   If so, the claimant is not disabled; if not, the ALJ proceeds to step five.   At step five, the ALJ determines if the claimant has the residual functional capacity ("RFC") to perform any other work.[1]   If so, the claimant is not disabled; if not, the claimant is disabled.   If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps.   20

---

[1]     Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.   <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).   Nonexertional limitations limit an individual's ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.   <u>Penny v.</u> <u>Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993); <u>Cooper</u>, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c).   Pain may be either an exertional or a nonexertional limitation.   <u>Penny</u>, 2 F.3d at 959; <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

C.F.R. § 404.1520; *see also* <u>Tackett</u>, 180 F.3d 1098.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. <u>Tackett</u>, 180 F.3d at 1098 and n.3; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996). If this burden is met, a *prima facie* case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering a claimant's RFC, age, education, and work experience, a claimant can perform other work which is available in significant numbers. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized that including a "severity" inquiry at stage two of the evaluation process "increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." <u>Bowen v. Yuckert</u>, 482 U.S. 137, 153 (1987); *see also* <u>Corrao V. Shalala</u>, 20 F.3d 943, 949 (9th Cir. 1994). Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that the step two inquiry is "a de minimis screening device to dispose of groundless claims." <u>Smolen</u>, 80 F.3d at 1290 (*citing* <u>Bowen</u>, 482 U.S. at 153-54); *see also* <u>Hawkins v. Chater</u>, 113 F.3d 1273, 1290 (9th Cir. 1996)(same); <u>Hudson v. Bowen</u>, 870 F.2d 1392, 1396 (8th Cir. 1989)(evaluation can stop at step two only when there is no more than a minimal effect on a claimant's ability to

7

work).   Accordingly, an impairment should be found to be non-severe "when [the] medical evidence establishes only a *slight abnormality* . . . which would have *no more than a minimal effect* on a [claimant]'s ability to work." <u>Yuckert v. Bowen</u>, 841 F.2d 303, 306 (9th Cir. 1988)(*citing* Social Security Ruling 85-28 (1985)).   An impairment or combination of impairments is not severe if it does not significantly limit a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521.   At step two, the ALJ will not consider plaintiff's age, education, and work experience in determining severity. 20 C.F.R. § 404.1520(c).   The ALJ considers plaintiff's education and illiteracy as vocational factors at step five of the inquiry.   20 CFR § 404.1564.

## II.   **The ALJ's Finding That Plaintiff's Shoulder And Neck Impairment Is Not Severe Is Not Challenged In This Action.**

As noted above, in her application for DIB, plaintiff claimed, *inter alia*, that she was physically disabled due to a shoulder injury. (A.R. 81.)   The ALJ concluded that:   plaintiff's shoulder and related neck impairment was not severe and, thus, not disabling; and therefore, absent other disabling impairments -- singly or in combination -- she could return to her past relevant work as a custodian.   No issue has been raised in this action regarding the propriety of that conclusion.[2]

---

[2]   Plaintiff's allegations regarding depression, inability to read, special education, learning disorder, and dyslexia will be addressed below.   Plaintiff raises no issue regarding stress.   Accordingly, the Court does not address her stress claim.

III.  **The ALJ Did Not Commit Reversible Error With Respect To Plaintiff's Alleged Side Effects From Medications Prescribed And Taken After The Period Of Disability.**

When plaintiff sought reconsideration, she added depression as one of her claimed disabling impairments, alleging that her depression began in approximately April 2006. (A.R. 135.) As her fourth issue raised in this action, plaintiff complains that the ALJ "totally failed to consider the type, dosage and side effects of plaintiff's prescribed medications" for her depression. (Joint Stip. at 11.) Specifically, plaintiff contends that the ALJ was obligated to consider and discuss the side effects from her prescribed medications, *i.e.,* Strattera 60 mg, one qAM [one each morning], and Abilify 5 mg, one qhs [at hour of sleep], which she alleges are taken for stress and depression. (*Id.; see* A.R. 137, 162.)[3] She also faults the ALJ for failing to consider a statement by her treating physician, set forth in a MEDICAL OPINION RE ABILITY TO DO WORK-RELATED ACTIVITIES form dated October 16, 2007, that "current medications taken may have side effects which prevent Ms. Lobato from normal function in these areas." (Joint Stip. at 11; A.R. 353.)

The Ninth Circuit has observed that an ALJ "must consider *all factors* that might have a 'significant impact on an individual's ability to work.'" Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993)(citation omitted). Such factors "may include side effects of

_____

[3]   Although plaintiff alleges that she takes Strattera for "stress," her medical record of October 16, 2007, lists "ADHD" as the reason that this medication is prescribed. (A.R. 162.)

9

medications as well as subjective evidence of pain." *Id.* at 818. Social Security Ruling 96-7p indicates that the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" should be considered in the disability evaluation. *See also* 20 C.F.R. §404.1529(c)(3)(iv). Side effects of medications are not relevant unless they affect the functional limitations of the claimant or the claimant's ability to work. *See* Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001). Moreover, a claimant must demonstrate disability prior to his or her DLI (*see* 20 C.F.R. § 404.315); thus, medications prescribed after a claimant's DLI for conditions that arose after that date are not relevant to the disability analysis.

Plaintiff argues that the ALJ committed error, because he failed to consider and address the evidence that, in September and October 2007, treating physicians indicated that plaintiff was taking medication for her depression and might be experiencing unspecified side effects from unidentified medications being taken at that time. However, the "current medications" in issue were being taken 20 months *after* plaintiff's DLI and appear to have been prescribed for plaintiff after the POD sought. The ALJ was not required to consider possible side effects experienced by plaintiff well over a year and half after the period of disability in issue.

Critically, plaintiff submits no evidence that medications, with potential (let alone actual) side effects, were prescribed for her prior to her DLI and during the POD she claims. After careful examination of the record, the Court does not find any evidence of medication taken by

plaintiff before her DLI and which caused her any reported disabling side effects.[4]  Because plaintiff bore the burden of proving a disabling impairment in existence prior to her DLI, and she submitted no evidence that she suffered from depression and/or related medicinal side effects during the claimed POD and before her DLI,[5] the ALJ properly did not weigh "the type, dosage, effectiveness, and side effects of any medication" prescribed and taken after her DLI in making his disability determination.

As noted earlier, the ALJ explicitly found that the initial medical evaluation conducted by Dr. Chau, plaintiff's psychiatrist, and the commencement of psychiatric treatment by Dr. Chau, did not occur until well after her DLI.  (A.R. 11-12.)  Although Dr. Chau noted that plaintiff had been started on an antidepressant three months prior to his initial examination of her -- that date, in approximately February or March 2006, was still some three months after plaintiff's DLI.  (A.R. 367.)  While the ALJ concluded that this post-DLI evidence was "not relevant to the period," he nonetheless examined Dr. Chau's treating records and noted that they showed, on several occasions, that plaintiff's mental condition improved with medication.  (A.R. 12,

[4]   The Court is mindful that step two is a *de minimus* screening. However, evidence of an impairment existing prior to a claimant's DLI and during the POD must exist for the step two inquiry to be satisfied. *See* <u>Flaten v. Secretary of HHS</u>, 44 F.3d 1453, 1458 (9th Cir. 1995); <u>Morgan v. Sullivan</u>, 945 F.2d 1079, 1080-81 (9th Cir. 1991).

[5]   The mere mention in the psychiatrist's initial evaluation that plaintiff reported that, ten years earlier, she had been treated by a therapist for depression for one year -- *i.e.*, while she was gainfully employed and five years before the alleged onset of disability -- does not constitute substantial evidence of a continuing or disabling mental impairment that prevented her from working during the relevant period. (A.R. 320.)

relying on Dr. Chau's treating records set forth at A.R. 314-25, 339-44, and 354-72.)  Furthermore, Dr. Chau's documentation of plaintiff's self reporting -- that her "depression has gotten worse, esp[ecially] these last few years because she hasn't worked for 6 years" -- suggests that plaintiff's depression was a symptom of her perceived inability to work, rather than the cause of any disability.  (A.R. 320-21.)

Moreover, with respect to plaintiff's claimed physical impairment, the ALJ *did* address the potential side effects of medications taken prior to her DLI and found "there was no credible evidence of regular usage of strong medication to alleviate pain that would significantly impair the claimant's ability to do basic work activities and there was no evidence in the medical record of any significant side effects prior to the date last insured."  (A.R. 12.)  Plaintiff does not challenge this finding, and critically, the records before the Court are devoid of any claims by plaintiff that she suffered from any functional limitations caused by her medications during the relevant period.  As a result, and given that plaintiff's present arguments rest only on post-period medications, there is no basis for finding any error by the ALJ in connection with his consideration of plaintiff's medications and their side effects.

**IV.  The ALJ Failed To Discuss And To Develop The Record Regarding Plaintiff's Claimed Learning Disorder And Dyslexia.**

As noted earlier, in applying for DIB, plaintiff alleged that she is disabled based on, *inter alia*, an unspecified learning disorder and dyslexia.  Although asserted as purportedly separate contentions,

12

plaintiff's first, second, third, and fifth issues effectively make a single argument, namely, that the ALJ improperly failed to consider plaintiff's claimed mental impairment based on her alleged inability to read and write, low comprehension span, and participation in special education classes.[6]  In support of her contention, plaintiff relies on two items of evidence.  First, at the hearing before the ALJ, plaintiff testified that, although she completed twelfth grade, she cannot read or write, "was always in" special education classes, and cannot read a newspaper.  (A.R. 27-28.)  Second, plaintiff cites to the above-noted MEDICAL OPINION RE ABILITY TO DO WORK-RELATED ACTIVITIES form prepared by her treating physician (Dr. Kyu Ho Yun) on October 16, 2007, in which the physician states that plaintiff "has low comprehension span" and "cannot read to understand clear and concise directive."  (A.R. 353.)

The Court finds no evidence in the record of any psycho-educational or IQ testing of plaintiff.  There also is no evidence in the record that plaintiff, prior to her DLI, was treated for any learning disorder or dyslexia.  However, plaintiff's testimony that she cannot read or write (despite completing high school) and regarding her inclusion in special education classes "always," when coupled with Dr. Yun's finding regarding plaintiff's limited comprehension span, suggests that she suffered from a learning disorder before her DLI, particularly as there

---

[6]  Plaintiff contends that her inability to read, low comprehension, and special education background should be considered at step two. Defendant contends that plaintiff's claimed impairments establish only an "educational disadvantage, i.e., illiteracy," which is an educational factor relevant only at step five of the sequential evaluation. Defendant's contention might be persuasive if plaintiff alleged only "illiteracy"; however, she alleges more, namely, a lifetime of an inability to read and write and special education, an unspecified learning disorder, and dyslexia.  Accordingly, the Court does not find defendant's "step five only" argument responsive or persuasive.

is no evidence of a traumatic brain injury in adulthood that caused a deterioration of her mental abilities.

Thus, the ALJ had before him at least some evidence indicating that plaintiff does suffer from some sort of learning disorder or other condition that impairs her ability to read and write and, relatedly, her comprehension abilities.   Although the ALJ cursorily noted that plaintiff, in her application, alleged that she could not work due to "learning disorder" and "dyslexia" (A.R. 11), he did not mention these claimed impairments again, much less analyze their effect on plaintiff's ability to work.  As plaintiff correctly observes, the ALJ also did not make any credibility findings regarding these two alleged impairments and plaintiff's testimony about her inability to read and write and history of special education.[7]   (Hereafter, for ease of reference, plaintiff's claimed mental impairment premised on learning disorder, dyslexia, inability to read and write, special education, and/or low comprehension ability are indicated by the shorthand term "Claimed Mental Impairment.")

---

[7]    The ALJ must make a finding on the credibility of the statements based on a consideration of the entire record whenever statements about intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence.  The ALJ's findings '"must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."'  <u>Moisa v. Barnhart</u>, 367 F.3d 882, 884 (9th Cir. 2004)(<i>quoting</i> <u>Rollins v. Massanari</u>, 261 F.3d 853, 856-57 (9th Cir. 2001)).

As defendant correctly observes, plaintiff has not challenged either the ALJ's evaluation of plaintiff's allegations of pain and subjective limitations or his adverse credibility finding in this respect.  In any event, based on the Court's review of the record, it appears the ALJ did provide clear and convincing reasons for finding plaintiff not entirely credible regarding her claimed physical limitations.  (A.R. 11-12.)

As noted earlier, the severity requirement at step two is a *de minimus* screening device to dispose of groundless claims. *See, e.g.,* Smolen, 80 F.3d at 1290; *see also* Bowen v. Yuckert, 482 U.S. 137, 153 (1987). An impairment can be found not severe at step two only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to do basic work activities. Smolen, 80 F.3d at 1290. Here, the ALJ had before him uncontradicted evidence, based on plaintiff's testimony and her treating physician's opinion, of the Claimed Mental Impairment. The Court finds that the Claimed Mental Impairment alleged by plaintiff, if believed, would have more than a minimal effect on her ability to perform basic work activities. The ALJ, however, failed entirely to consider whether these alleged mental conditions were severe for step two purposes. That failure constitutes error.

Plaintiff's issues one, two, three, and five each rest on the above-noted error. At first blush, it might appear that the ALJ's failure to discuss plaintiff's Claimed Mental Impairment is harmless error, given the fact that, until plaintiff suffered her shoulder and neck injury, she had successfully engaged in 15 years of past relevant work notwithstanding her Claimed Mental Impairment. However, the Ninth Circuit's decision in Stout, *supra*, mandates the opposite conclusion.

Stout applied for DIB and SSI due to back and mental impairments. His sister testified regarding the negative effect Stout's claimed mental impairments had on his ability to work, particularly with respect to Stout's frustration at simple, monotonous tasks and resulting rage. Stout, 454 F.3d at 1053. Stout's brother-in-law -- who had worked with

Stout for 15 years as a boss and co-worker -- submitted a letter in
which he described Stout's mental problems and frustrations with
performing very simple tasks.  *Id.*  According to the majority,[8] both lay
witnesses indicated that Stout needed close, constant supervision to
perform simple tasks.  *Id.* at 1053-54.  A vocational expert testified
that a need for constant supervision would preclude a claimant from
being employable.  *Id.* at 1054.  The administrative law judge concluded
that Stout was not disabled, because he could perform his past relevant
work, and the district court affirmed, reasoning that:  the lay witness
evidence indicated that Stout had possessed the same "'intellectual
deficits'" during his working years that he now alleged constitute a
disabling impairment, yet he had been able to engage in substantial
gainful activity despite them; and because the medical evidence
established that "'nothing has changed,'" the administrative law judge's
failure to discuss the lay witness evidence was harmless.  *Id.* at 1054.

     The Ninth Circuit reviewed its prior decisions in which harmless
error had been found and discerned two principles attendant to
application of the doctrine:  first, the administrative law judge's
error was inconsequential to the ultimate conclusion of nondisability;
and second, no case to date had found that a complete failure to address
lay testimony, which detailed how a claimant's impairment limited his
ability to work, was harmless.  Stout, 454 F.3d at 1054-56.  The Ninth
Circuit concluded that the district court had erred in applying the
harmless error doctrine, because:  the vocational expert expressly
opined that "constant supervision is unacceptable in the competitive

---

[8]     Stout was a 2-1 decision, with Judge O'Scannlain dissenting.

16

environment"; the lay witness testimony indicating that Stout needed constant supervision was "uncontradicted," yet the administrative law judge "articulated no reasons" for rejecting such testimony without comment; and the administrative law judge's "silent disregard [left the Ninth Circuit] with nothing to review to determine whether the error materially impacted the ALJ's ultimate decision." *Id.* at 1056.  The Ninth Circuit concluded that, if the lay witness evidence had been fully credited, it supported a conclusion that Stout's mental impairments precluded him from returning to gainful employment. *Id.* Accordingly, because the Ninth Circuit could not "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination," the administrative law judge's failure to provide any reason for rejecting the lay testimony was not harmless, and reversal and remand was required. *Id.* at 1056-57.[9]

In this case, as in Stout, the ALJ failed to consider and comment on uncontradicted evidence regarding the Claimed Mental Impairment. Here, the failure is even more egregious than that in Stout, because the ALJ failed to address the Claimed Mental Impairment at the step two *de*

_____

[9]    In his dissent, Judge O'Scannlain agreed with the district court's rationale regarding why the administrative law judge's erroneous failure to address the lay witness evidence was harmless.  Judge O'Scannlain observed that:  the brother-in-law's description of his working relationship with Stout indicated that Stout had not actually been provided with constant supervision; after the brother-in-law closed his company, Stout worked for another company "without supervision and support from a family member"; and the testimony of Stout's sister indicated that Stout could perform simple tasks that required minimal interaction, although he did have a tendency to get bored and lose focus.   454 F.3d at 1057.   Judge O'Scannlain concluded that, because nothing in the lay testimony indicated that Stout's mental abilities had changed and he was able to work in the past despite these same claimed mental limitations, the administrative law judge's failure to properly address the lay witness evidence was harmless error.   *Id.*

17

*minimus* screening level, whereas the failure in <u>Stout</u> occurred at the step four and step five levels.  <u>Stout</u> instructs that this Court cannot characterize the ALJ's failure to consider the evidence of the Claimed Mental Impairment -- namely, plaintiff's testimony regarding her inability to read and write and her inclusion in special education programs, and her treating physician's opinion that she has a low comprehension level -- as harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability conclusion."  <u>Stout</u>, 454 F.3d at 1056.

In <u>Carmickle v. Comm'r</u>, 533 F.3d 1155, 1163-64 (9th Cir. 2008), the Ninth Circuit noted that, when an administrative law judge's error lies in stating erroneous reasons for rejecting testimony, the relevant harmless error inquiry is "not whether the ALJ would have made a different decision absent any error, [but] whether the ALJ's decision remains legally valid, despite such error."  *Id.* at 1162 (concluding that the focus on review should be on the legal validity of the administrative law judge's decision, because he had provided specific reasons for his conclusion that the claimant was not credible).[10] However, in the situation involved in <u>Stout</u> and here -- *viz.*, where an administrative law judge has failed to provide any reasons for rejecting the evidence in issue -- the reviewing court must consider whether the administrative law judge "would have made a different decision" absent

---

[10]    *See also* <u>Batson v. Comm'r</u>, 359 F.3d 1190, 1195-97 (9th Cir. 2004)(holding that an administrative law judge's erroneous reliance on a particular reason in making an adverse credibility determination was harmless error, when his remaining reasons and adverse credibility finding were adequately supported by substantial evidence; thus, the reliance on the improper reasons did not materially affect his decision and was harmless).

such error. *Id.* at 1162-63. Here, as in <u>Stout</u>, the ALJ's utter failure to address the Claimed Mental Impairment leaves the Court "with nothing to review to determine whether the error materially impacted the ALJ's ultimate decision." <u>Stout</u>, 454 F.3d at 1056. The Court, thus, cannot "confidently conclude" that the ALJ would not have made a different decision had he considered the Claimed Mental Impairment. *Id.*

The Commissioner correctly argues that a claimant' inability to read is a factor that may appropriately be addressed as a sequential step five issue. Here, however, the Claimed Mental Impairment alleged by plaintiff, and which the ALJ failed entirely to consider, presents a potentially larger impairment issue than a mere inability to read. Plaintiff claims her learning disorder and dyslexia are disabling impairments that, in and of themselves, render her unable to work, and thus, they should have been addressed at step two. Under <u>Stout</u>, the Court cannot find the ALJ's utter failure to consider such uncontradicted evidence to be harmless error.[11] Accordingly, reversal based on the ALJ's error in this respect is warranted.

**V.   <u>Remand is Required</u>.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no

---

[11]   Given the facts of this case, including plaintiff's ability to perform her past relevant work despite the ongoing existence of the Claimed Mental Impairment, the Court expresses no opinion on whether the her assertions in this respect, if properly considered, should result in a finding of disability.

useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

Here, remand is the appropriate remedy to allow the ALJ to develop the record regarding plaintiff's alleged learning disorder and dyslexia and to allow the ALJ the opportunity to properly address the Claimed Mental Impairment. *See* Stout, 454 F.3d at 1056-57; *see also, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful). Further, the ALJ must consider the impact of all of plaintiff's impairments, whether "severe" or not, on her ability to engage in and sustain full-time work. *See* Erickson, 9 F.3d at 817 (ALJ must consider "all factors" that might have a significant impact on claimant's ability to work); *see also* 20 C.F.R. § 404.1545(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe").

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for

20

further proceedings consistent with this Memorandum Opinion and Order.

     IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

     **LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 8, 2010

_Margaret A. Nagle_
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

21